### Henry T. Mudd v. Lucia Bates, Adm'r.

1. Partnership—*What is, Agreement.*—An agreement between B. and M. that M., in addition to twenty-five head of cattle already furnished, should furnish $1,200, to be invested by B. in mares, and such further sum as M. might advance; that B. should have the care of such stock and the product thereof for five years. All losses to be borne equally and all proceeds, after paying M. the money advanced, to be shared equally, constitutes a partnership.

2. Same—*Settlement of Differences in Chancery.*—A court of chancery is the only judicial forum that can take jurisdiction of the differences between partners for the purposes of settlement.

Bill, to settle a partnership. Appeal from the Circuit Court of Pike County; the Hon. Jefferson Orr, Judge, presiding. Heard in this court at the November term, 1897. Reversed and remanded. Opinion filed February 9, 1898.

*The agreement referred to in the opinion of the court:*

This agreement or contract made and entered into between Henry T. Mudd of the first part, and Daniel C. Bates of the second part, both of the county of Pike and State of Illinois. Witnesseth, that whereas, the said Henry T. Mudd has paid for and delivered to said

Daniel C. Bates twenty-five head of cattle (all fine young heifers) at a cost of and of the value of five hundred and twelve dollars and has agreed to furnish the sum of twelve hundred dollars to be invested to best advantage by said Bates in the purchase of mares in Texas, or the adjacent territory and removing the same to Pike County, Illinois.

Now, therefore, in consideration of the foregoing the said Daniel C. Bates covenants and agrees with said Henry T. Mudd that he will faithfully and diligently endeavor to invest said sum of money to the best possible advantage in said mares as he shall think best adjusted to the purpose designed by the contract, that is, the growth and increase of such investment.

Said Bates further covenants and agrees that he will keep said cattle and mares which shall be purchased in pursuance of this contract, and any additional cattle, mares or horses which said Mudd may at any time during the continuation of this agreement furnish to him the money to purchase, for and during the term of five years from the first day of April next, unless it may be deemed best by him to sell portions of the same, or their increase, from time to time during said term, in which case the proceeds of such sale shall be equally divided between the parties hereto, or shall be paid to said Mudd on account of advances as made as aforesaid, or shall be invested in other stock, whichever may be deemed best.

The said Bates further covenants and agrees that he will, during said term, faithfully endeavor to promote the growth, increase and value of the stock in his care, attention and food. It is understood and agreed between the parties hereto that any loss resulting from this business, whether by disease, accident or casualty, or from decline in the market value of such stock, shall be borne and paid equally by said parties, share alike,

and that all profits arising from growth, increase or appreciation in value, or from operations by reinvesting any moneys realized from sales of stock, shall be equally divided between said parties, or their legal representatives.

At the expiration of said term, or other sooner determination of this contract, it is agreed that the stock on hand shall be sold to the best advantage the markets will afford, and that the proceeds of such sale or sales shall be applied as follows, to wit:    First, to refund to said Mudd the balance unpaid of any of all money furnished by him as heretofore mentioned, or which may hereafter be furnished by him in the prosecution of this stock business, and the balance remaining shall then be divided equally between the said parties hereto, or to their legal representatives, share and share alike. If it shall, at the termination of this contract, be mutually agreed that it is best to divide in kind the stock then on hand, then the said Bates agrees and binds himself to pay to said Mudd one half of such sum as shall then remain unpaid of all advances made by said Mudd in the prosecution of this business, and then the stock on hand shall then be divided in kind as nearly as possible into shares of equal value between the parties hereto, or their legal representatives.

Said Mudd covenants and agrees that during the continuation of this contract said Bates shall have the right to use for the purpose of aiding in the proper care and attention to said stock, of the farm belonging to said Mudd situated in the southeast quarter of section thirty-six (36) in township five (5) south of range four (4) west in the county of Pike and State of Illinois, subject to this reservation, however, that said use shall not interfere with any contract about said farm of Dr. E. M. Seeley, who has been agent for the same for some years past.

Mudd v. Bates.

In witness whereof the parties hereto do hereunto subscribe their names this twentieth day of February, A. D. 1886.

HENRY T. MUDD,
DANIEL C. BATES.

A. G. CRAWFORD, attorney for appellant.

If one person is to furnish the property, or money with which to procure it, and the other is to give his services in disposing of it under an agreement by which they are to divide the profit or loss, it is a partnership *inter se*, for sharing of loss is inconsistent with mere employment. 1 Bates on Partnership, Sec. 28.

Although one partner is to furnish all the capital, if the business or enterprise appears to be owned by both jointly, a communion of profits as partners rather than a sharing of them as compensation will naturally be considered to result, or in other words, both are principals. * * * The general rule in such cases is, that the parties are to be treated as partners unless the contrary is shown; that is, they will be supposed to have desired to obtain the benefit of a partnership and to share the chances together where they have omitted to show a contrary intention. 1 Bates on Partnership, Sec. 35.

Where R. furnishes L. with $254 which L. agrees to invest in cattle, feed them, and in a year sell them, the cattle to belong to R. until the money is repaid, profits to be equally divided, L. guaranteeing that R.'s profits shall not be less than twenty per cent, this was held to be a true partnership in the profits, and a suit for an accounting lies between them. Robbins v. Laswell, 27 Ill. 365.

A person furnished money to another to purchase corn for speculation, the one receiving the money to

make the purchases to bear all expense in the purchase and shipment, and upon sale of corn the amount in excess of money advanced to be divided equally, and in case of loss to be borne equally. Held a true partnership. Pierce v. Shippee et al., 90 Ill. 371.

Defendant furnished cattle to another under an agreement that the latter was to keep them four years, at the end of which time they were to be sold, their cost repaid to plaintiff, and the remaining proceeds equally divided, or the loss, if any, to be equally divided. Held a true partnership. Stratton v. O'Connor (Tex. Civ. App.), 34 S. W. Rep. 158.

Henry Bush and Matthews & Grigsby, attorneys for appellees.

Contended that the contract between Mudd and Bates was sufficient in itself to show a co-partnership. There is no absolute rule of law by which it can be determined that a partnership exists in any particular case. Each case stands upon its own circumstances, and in a case of this kind where no rights of third parties have intervened, the intention of the parties to be arrived at not only by the contract, but by all the surrounding circumstances, will control. If the contract is inconsistent with the relations of the parties they are not partners even though they may call themselves partners in the contract. 17 Am. and Eng. Ency. of Law, 834, and authorities cited; 1 Bates on Partnership, 64.

Mr. Presiding Justice Harker delivered the opinion of the Court.

Appellant filed a bill in the Circuit Court in which he set up that on the twentieth of February, 1886, he formed a partnership with Daniel Bates for the purpose of raising and disposing of cattle and horses un-

der a written contract wherein it was agreed that appellant, in addition to twenty-five head of cattle already furnished, should furnish $1,200 to be invested by Bates in mares, that Bates should invest to the best advantage the $1,200, so to be furnished and such further sums as appellant might advance, that Bates should have the care of such stock and the product thereof for five years, that all losses should be borne equally, and that all proceeds, after paying to appellant the money advanced, should be shared equally. The bill further alleged that appellant advanced $5,100.95 under the contract, and that the partnership continued until the seventeenth of April, 1895, that Bates did not account to appellant for all the cattle and horses purchased and raised, but after selling large quantities of them, appropriated the proceeds to his own use, that Bates died on the twenty-seventh of September, 1895, owing appellant large sums growing out of the partnership business. Appellees are the widow, children and administratrix of Bates, and were made defendants for that reason. The bill prayed for an accounting.

On demurrer the court dismissed the bill for want of equity.

We are clearly of the opinion that the agreement entered into between appellant and Bates constituted a partnership. A court of chancery, therefore, was the only judicial forum that could take jurisdiction of the differences between the parties for the purpose of a settlement. If the bill was dismissed because the chancellor was of the opinion that a partnership relation did not exist between the parties, he was in error.

It is contended by counsel for appellee, however, that appellant was guilty of laches in not bringing his suit earlier, and for that reason the court properly dismissed the bill.

While it is true that the term for the existence of the

partnership was fixed in the written contract at five years, it is alleged in the bill that the parties continued to operate under it and the business continued until April 17, 1895. It is further alleged that Bates sold a great many cattle and horses and did not truthfully account for the proceeds, of which appellant was ingorant until after the death of Bates and within twelve months of the date of filing the bill.

The bill nowhere shows such laches on the part of complainant as would justify a court in dismissing it.

The decree below will be reversed and the cause remanded with directions to the Circuit Court to overrule the demurrer and require the defendants to answer. Reversed and remanded.